UNITED STATES of America, Plaintiff,

v.

Clara Monica GARCIA–RESTREPO and Fabio Arango-Velez, Defendants.

No. 85–597–Cr.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

Nov. 3, 1986.

Catherine M. Volz, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Fernando E. Heria, Hialeah, Fla., for Garcia-Restrepo.

Mario S. Cano, Coral Gables, Fla., for Arango-Velez.

## MEMORANDUM OPINION

ZLOCH, District Judge.

THIS MATTER is before the Court upon the Appeal from Magistrate's Order And Petition For Hearing (DE 52) filed herein by the Defendant, FABIO ARANGO–VELEZ, and the Objections To Magistrate's Report And Recommendations That This Court Suppress Evidence (DE 47) filed herein by the United States of America. Both are directed toward the Memorandum Order of United States Magistrate Peter L. Nimkoff dated January 7, 1986 (DE 48).

The Government's Objections (DE 47) are directed to that portion of the United States Magistrate's Order suppressing certain evidence as it pertains to the Defendant, CLARA MONICA GARCIA–RESTREPO, and declaring 31 U.S.C. Section 5317(b) unconstitutional.

The Appeal (DE 52) of the Defendant, FABIO ARANGO–VELEZ, is directed to that portion of the United States Magistrate's Order upholding the search of said Defendant's temporary residence by Customs Agents and evidence discovered as a result of said search.

The testimony and evidence presented to the United States Magistrate reveal that following a tip from a confidential informant that two Latin males would be transporting currency from Miami to Medellin, Colombia, a team of Special Customs Agents proceeded to do an outbound examination of the flight in question. Two large signs, in English and Spanish, were placed at the check-in counter for the flight detailing the reporting requirements for transportation out of this country of currency in excess of $10,000.00. Three announcements, in both English and Spanish, were made over a loudspeaker to passengers waiting at the departure gate. Subsequently, passengers were specifically asked if they were transporting more than $10,000.00 before leaving the gate. After the plane was called, Special Customs Agents Karb and Addison were stationed in the jetway, a small area between the escalator out of the gate and the hallway leading directly to the plane, to question passengers.

Agent Karb noticed Defendant, CLARA MONICA GARCIA–RESTREPO, as she came down the elevator. She was wearing a new, bright yellow dress and carrying an old, black vinyl bag. She had what the agent described as a nervous smile. Agent Karb approached Defendant GARCIA and asked to see her passport and ticket. She handed them over to him. He noticed that she became increasingly nervous. She would not look at him and she began biting her nails. Agent Karb gave her back her passport and ticket and asked permission, in Spanish by saying "con permiso", to search her bag. Defendant GARCIA indicated her assent. The agent pretended to have trouble opening the bag and asked her for help, again saying "con permiso" and pointing to the bag. Defendant GARCIA opened the bag for him.

Agent Karb removed some musical records from the bag and noticed that the inside bottom of the bag was higher than the outside. He suspected a hidden compartment and, with another agent, opened the bottom of the bag with a knife. They found $86,000.00 in the secret compartment. After verifying from other agents that Defendant GARCIA had been informed of the reporting requirements, Agent Karb arrested her and advised her of her rights. At that point, Agent Karb moved Defendant GARCIA to the side of the jetway and had her luggage removed from the plane. In a life preserver inside her luggage, another $69,000.00 in currency was found.

Defendant GARCIA was taken to the Customs office in Miami. She was again advised of her rights and she signed a waiver in Spanish. She denied knowledge of the currency and said her relatives had packed for her. A magazine in her luggage had a Florida address label and she said that was where she had been staying. She agreed to direct the agents to the house.

Upon approaching the house, Agents Karb and Lozada observed two Latin males entering a 1984 Toyota. The agents identified themselves and one of the males identified himself as Fabio Arango-Velez, the occupant of the house, and identified the other as Pedro Pablo Garcia-Restrepo, his brother-in-law. Speaking in Spanish, Agent Lozado asked if they could enter the house to discuss possible violations of federal law. Defendant ARANGO–VELEZ agreed. After some conversation in the living room, the agents asked for consent to search the house. The Defendant, ARANGO–VELEZ, consented and signed a written consent form in Spanish.

In the course of the search, before the agents searched the inside of a vehicle, the Defendant, ARANGO–VELEZ, said, "I have to be honest with you, there's cocaine in the trunk." ARANGO–VELEZ was read his rights in Spanish and he stated that he understood. He signed a waiver in

Spanish and indicated he would cooperate. The search uncovered approximately 92 pounds of cocaine and approximately $150,-000.00 in currency.

The Court heard oral argument on the Appeal and Objections aforementioned.

### OBJECTIONS OF THE UNITED STATES RE: DEFENDANT GARCIA–RESTREPO

The Government here challenges the proposed Findings and Recommendations of the United States Magistrate (1) that Title 31, United States Code, Section 5317(b) is unconstitutional and (2) that the search of the carry-on bag of the Defendant GARCIA–RESTREPO was accomplished without her free and voluntary consent, thereby tainting the further search of her checked luggage and any subsequent statements made by her to authorities.

The detailed basis for the conclusion of the United States Magistrate concerning the unconstitutionality of Title 31, United States Code, Section 5317(b) is set forth in a separate Report (or "Memorandum Order") of the United States Magistrate issued December 26, 1985 in an otherwise unrelated case; *United States v. Hernandez-Salazar*, Case No. 85–0389–CR–HASTINGS, United States District Court, Southern District of Florida. On January 27, 1986, the Report and Recommendation of the United States Magistrate in that case were reversed by the United States District Court, which found the statutory provisions in question to be constitutional.

■ The initial step in Ms. Garcia-Restrepo's encounter with Customs Agents was Agent Karb's questioning. A Customs Agent's request to a passenger, about to board an international flight that she produce her airline ticket and passport, is a minimal intrusion. In assessing whether this intrusion was reasonable under the Fourth Amendment, it must be balanced against the Government's interest in crime prevention. *Dunaway v. New York*, 442 U.S. 200, 209, 99 S.Ct. 2248, 2254, 60 L.Ed.2d 824 (1979). The intrusion here was minimal and justified under the Fourth Amendment.

The next event in Ms. Garcia-Restrepo's encounter with the Customs Agents was the search of her carry-on bag, including cutting open the bottom. The Government asserts that Ms. Garcia-Restrepo was asked in Spanish if the agent could search the bag and that she understood the request because she helped the agent to open the bag. Agent Karb is not a native Spanish speaking individual.

The evidence reflects that Agent Karb testified that he said, "con permiso" and then bent down to open the bag.

The United States Magistrate found that the phrase "con permiso" was one of courtesy rather than permission and, therefore, that Ms. Garcia-Restrepo's acquiescence to the search could not be a free and voluntary consent as required by *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2058, 2059, 36 L.Ed.2d 854 (1973).

However, no evidence was presented at the suppression hearings to indicate that the Defendant GARCIA–RESTREPO understood the phrase, "con permiso" in any way other than a request by Agent Karb for her consent to inspect her bag. The testimony in evidence before the United States Magistrate shows that the Defendant GARCIA–RESTREPO indicated her consent when Agent Karb pointed to her bag and said, "con permiso". In addition, after having some difficulty with the bag, Agent Karb again indicated toward the bag and said, "con permiso", at which time the Defendant GARCIA–RESTREPO assisted him by opening the bag.

The Court finds that the Defendant GARCIA–RESTREPO's conduct reflects that her acquiescence to the search was given freely and voluntarily and that her understanding of "con permiso" was not that it was a courtesy "excuse me", but a request for permission to look into her bag, to which she freely and voluntarily consented.

■ Turning now to the constitutionality of Title 31, United States Code, Section 5317(b), the United States Magistrate relying on his reasons recited in his Memorandum Order in *United States v. Hernandez-Salazar*, Case No. 85–0389–CR–HASTINGS, United States District Court, Southern District of Florida, found that 31 U.S.C. Section 5317(b) when read together with 31 U.S.C. Section 5317(a) was void for vagueness.

When applying the standard principles of statutory construction, it is clear that Sections 5317(a) and 5317(b) are harmonious and that Congress enacted Section 5317(b) as a limited exception to Section 5317(a).

Section 5317(a) states as follows:

The Secretary of the Treasury may apply to a court of competent jurisdiction for a search warrant when the Secretary reasonably believes a monetary instrument is being transported and a report on the instrument under section 5316 of this title has not been filed or contains a material omission or misstatement. The Secretary shall include a statement of information in support of the warrant. On a showing of probable cause, the court may issue a search warrant for a designated person or a designated or described place or physical object. This subsection does not affect the authority of the Secretary under another law.

Section 5317(b) states as follows:

A customs officer may stop and search without a search warrant, a vehicle, vessel, aircraft, or other conveyance, envelope or other container, or person entering or departing from the United States with respect to which or whom the officer has reasonable cause to believe there is a monetary instrument being transported in violation of section 5316 of this title.

An amendment to a statute should be read as if the entire statute had originally been enacted as one section. Effect is given to each part and they are interpreted so that they do not conflict. *American Airlines, Inc. v. Remis Industries, Inc.*, 494 F.2d 196 (2nd Cir.1974).

It is clear that Section 5317(b) is limited to the Customs Service and to persons or objects entering or departing the United States.

The last sentence of Section 5317(a) specifically states that it does not affect the authority of the Secretary under another law. Therefore, the last sentence of Subsection (a) allows Customs officers in a border situation to search for currency on "reasonable cause to believe" that 31 U.S.C. Section 5316 is being violated. Section 5316 states that anyone who enters or leaves the United States carrying more than $10,000.00 in currency or negotiable instruments must file a reporting form.

The foregoing shows that Sections 5317(a) and (b) are consistent with each other.

The United States Supreme Court has defined the "void for vagueness" doctrine as requiring "that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawsen*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *United States v. Frade*, 709 F.2d 1387 (11th Cir.1983).

This Court finds that Section 5317(b) is not a penal statute but instead is procedural in that it merely limits the Government's authority to search at the border.

The "void for vagueness" doctrine is meant to insure that a person has specific notice of what conduct is prohibited. It does not apply to the minimum standard on which the Government may rely to justify a warrantless search.

A review of the legislative history shows that Congress intended a "reasonable suspicion standard."

A bill dealing with the subject matter of Section 5317(b) was introduced during the 96th Congress, H.R. 4073, 96th Cong. 1st

Sess., 125 Cong.Rec. 10990 (1979).[1] H.R. 4073 allowed customs officer to "stop, search, and examine without a search warrant, any ... envelope or other container, or person entering or departing from the United States on which or whom he shall have *reasonable cause to suspect* there are monetary instruments in the process of being transported for which a report is required...." The bill's sponsor, Congressman LaFalce, explained on the floor of the House of Representatives that the bill "would allow customs officials to search for unreported amounts of cash in the same way they are now permitted to search for undeclared or illegal merchandise." 125 Cong.Rec.—1979.[2]

During hearings in the House Ways and Means Committee, Congressman Stark, who opposed the "reasonable cause to believe" standard, introduced into the hearing records an analysis of H.R. 5961[3] prepared by the Congressional Research Service of the Library of Congress, which noted, among other things:

> The standard for the search authorized by the bill is a lower standard than the probable cause standard of a search warrant. *A reasonable cause standard is often used in the context of administrative agency subpoena.* It seems to connote a more subjective approach than that of the judicial warrant. On the theory that the administrative officer issuing the subpoena is familiar with the details of the investigation, the standard he applies is very much a standard of what is reasonable to him. (Emphasis added)

*Certain Tariff and Trade Bills: Hearings Before the Subcomm. on Trade of the House of Representatives Comm. on Ways and Means* 96th Cong.2d Sess. 280 (1980). Congressman Stark also stated that reasonable cause was a lower standard than probably cause. *Id.* at 278.

The Ways and Means Committee reported H.R. 5961 to the House favorably, amending "reasonable cause" to the more restrictive standard of "probable cause." H.Rep. No. 829, Part 2, 96th Cong.2d Sess. 4 (1980). The bill did not pass the House. 125 Cong.Rec. 19918 (1980).

Congressman LaFalce introduced three similar bills in the House during the 97th Congress. One allowed warrantless border currency searches on mere suspicion, H.R. 5047, one which allowed the same searches on "reasonable cause," H.R. 5046 and one which allowed border searches on "probable cause." H.R. 5045, a companion bill in the Senate required "reasonable cause." S.1907, 97th Cong., 1st Sess. 127 Cong.Rec. S14460 (daily ed. Dec. 3, 1981). Congress took no action on any of these bills.

During the 98th Congress, Congressman LaFalce again introduced his three bills with alternative standards. Congress chose to pass "reasonable cause to believe" as the standard for warrantless border currency searches in the *Comprehensive Crime Control Act of 1984.* Pub.L. No. 98–473, 98 Stat. 2135, Title II, Section 901(d), codified at 31 U.S.C. Section 5317(b).

There are only two standards to be applied in the context of border searches. *United States v. Montoya de Hernandez,*

1. The legislative histories of the following bills were incorporated by reference into the legislative history of Title II—Currency and Foreign Transactions Reporting Act Amendments—Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 2135 (1984). H.R.Rep. No. 98–984, Part 1, 98th Cong.2d Sess. 4 (1984). Section 5317(b) was passed as Section 901(d) of Title II.

2. Congressman LaFalce was referring to the powers granted customs officers by 19 U.S.C. Section 482, which states, in pertinent part:

> Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law ... and to search any trunk or envelope, wherever found, in which he may have a *reasonable cause to suspect* there is merchandise which was imported contrary to law; (emphasis added)

3. H.R. 4073 was included in an omnibus bill, H.R. 5961, 96th Cong., 1st Sess. 125 Cong.Rec. 33699 (1979).

—— U.S. ——, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). These are "probable cause" and "reasonable suspicion." The provisions of Section 5317(a) clearly require the higher standard of "probable cause" in order for a Magistrate to issue a warrant which might be served anywhere, not only at the border. In carving out the exceptions set forth in Section 5317(b), it is obvious that Congress intended "reasonable cause to believe" to mean "reasonable suspicion" for Customs agents to conduct a warrantless search at the border.

Furthermore, it is clear that Congress has the power to authorize "outbound border searches" on less than probable cause. *United States v. Cardona,* 769 F.2d 625 (9th Cir.1985); *United States v. Udofot,* 711 F.2d 831 (8th Cir.1983) *cert. denied,* 464 U.S. 986, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983); *United States v. Aljouny,* 629 F.2d 830, 835 (2nd Cir.1980), *cert. denied,* 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981); *United States v. Stanley,* 545 F.2d 661 (9th Cir.1976), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978). In *California Bankers Association v. Shultz,* 416 U.S. 21, 63, 94 S.Ct. 1494, 1518, 39 L.Ed.2d 812 (1974), the Supreme Court noted approvingly in dictum that "those entering and leaving the country may be examined as to their belongings and effects, all without violating the Fourth Amendment...."

It is unquestioned that the Constitution allows inbound border searches to be made on less than "probable cause", and that inbound searches are limited only by their "reasonableness". *United States v. Ramsey,* 431 U.S. 606, 621–622, 97 S.Ct. 1972, 1981–1982, 52 L.Ed.2d 617 (1977).

The Eleventh Circuit in *United States v. Chemaly,* 741 F.2d 1346 (11th Cir.1984), stated that the Constitution provides the outer limit of the government's ability to act upon the individual by conducting an outbound border search and held that Congress could legislate a more stringent standard for outbound border searches than the Constitution requires. *Id.* at 1351–52. In Section 5317(b), Congress has legislated a standard of "reasonable suspicion" for warrantless border currency searches, an area where the Constitution permits a search bounded only by its "reasonableness."

The Ninth Circuit held in *Stanley,* "Thus both incoming and outgoing border-crossing searches have several features in common: (1) the government is interested in protecting some interest of United States citizens, such as restriction of illicit international drug trade, (2) there is a likelihood of smuggling attempts at the border, (3) there is difficulty in detecting drug smuggling, (4) the individual is on notice that his privacy may be invaded when he crosses the border, and (5) he will be searched only because of his membership in a morally neutral class." The Eleventh Circuit has cited the *Stanley* analysis with approval. *United States v. Hildago-Gato,* 703 F.2d 1267 (11th Cir.1983).

It is clear that outbound travelers have no greater expectation of privacy than inbound travelers. Also, the government has no lesser interest in baggage and persons leaving the country than it has in baggage and persons entering the country. Just as Congress does not require notice of a possible Customs search to an inbound traveler, neither is notice required to an outbound traveler that his bags can be searched.

### APPEAL FROM MAGISTRATE'S ORDER: DEFENDANT ARANGO–VELEZ

■ Defendant ARANGO–VELEZ here challenges the proposed Findings and Recommendations of the United States Magistrate (1) that said Defendant lacked a sufficiently reasonable expectation of privacy in the carry-on bag of the Co-Defendant GARCIA–RESTREPO to have standing to challenge the lawfulness of the search of such bag, and (2) that said Defendant freely and voluntarily consented to a search of his home by authorities. The Defendant ARANGO–VELEZ has made no showing that he can claim any legitimate privacy interest in the alleged illegal search or seizure directed against the Co-Defendant GARCIA–

RESTREPO. Under *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), in order to raise Fourth Amendment claims the Defendant ARANGO–VELEZ must show that he enjoyed a legitimate expectation of privacy in the areas which were the subject of the search and seizure. Regarding the bag being carried by the Defendant GARCIA–RESTREPO, he has made no such showing.

■ Regarding the search of the residence, the evidence before the United States Magistrate shows that the Defendant ARANGO–VELEZ admitted the agents to the residence, that there were no threats of arrest against him, his child or his wife, and there was no display of weapons. He was questioned by a Customs agent who was a native Spanish-speaker and the consent forms were signed also in Spanish. To determine "whether a consent was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Bustamonte*, 412 U.S. at 227, 93 S.Ct. at 2048.

The Court finds that the Defendant ARANGO–VELEZ's consent was given freely and voluntarily.

After due consideration, it is

ORDERED AND ADJUDGED as follows:

1. The Objections To Magistrate's Report and Recommendation That This Court Suppress Evidence (DE 47) filed herein by the UNITED STATES OF AMERICA be and the same are hereby GRANTED; and

2. The Appeal From Magistrate's Order And Petition For Hearing (DE 52) filed herein by the Defendant, FABIO ARANGO–VELEZ, be and the same are hereby DENIED.